## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JEFFERY L. W.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:23-CV-337-CDL** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.**[1] | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision and **remands** the case for further proceedings.

### I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any

---

[1]    On December 20, 2023, Martin O'Malley was sworn in as the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), O'Malley is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 587 U.S. 97 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 587 U.S. at 99(quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.     Procedural History

On April 18, 2018, the plaintiff filed a Title II application for a period of disability and disability insurance benefits. (R. 164). The plaintiff was 46 years old on his initially alleged disability onset date of September 16, 2017. (R. 164). He later amended this date to January 22, 2018. (R. 194). The plaintiff's insured status under Title II of the Act expired

on September 30, 2021, when he was 50 years old. (R. 611). The plaintiff alleged disability

due to migraines, right side numbness, including in his fingers and toes, balance problems,

dizziness, ulcers, and concussions. (R. 206). He has past work as a welder, press operator,

and pipe cutter. (*See* R. 40, 530, 766).

The Commissioner denied the plaintiff's application at the initial and

reconsideration levels. The plaintiff then requested a hearing before an Administrative Law

Judge (ALJ), who held a hearing on October 22, 2019. (R. 36). Testimony was given by

the plaintiff and a Vocational Expert (VE). The plaintiff testified that he is right-handed.

(R. 40). He stopped working due to dizziness, weakness in his lower extremities, and

increasing difficulty holding himself up and staying steady with his right hand to complete

welds. (R. 41). He experiences pain, tingling, and soreness in the upper right extremity. (R.

43). The ALJ acknowledged that the plaintiff repeatedly gestured to his right hand

throughout the hearing. *Id*. The plaintiff stated:

> It's trapping numbness, just dull pain. It is always in these two lower fingers,
> my pinky finger and the next finger to it. This hand cramps so much and the
> wrist hurts pretty bad too. I can hardly use it, sometimes, some days. I can
> use it fairly okay but then trying to write, using my spoon sometimes, eat
> dinner, dipping the spoon or writing causes my hand to cramp and shooting
> pains and I just try not to use it very much.

*Id*. When asked if he could grasp and use a hammer, the plaintiff replied, "[i]t would be a

problem." He stated that pain in his right hand, wrist, and forearm would prevent him from

using a hammer. (R. 46).

The ALJ issued a decision on October 29, 2019, denying disability benefits. (R. 28).

The ALJ found that the plaintiff had the residual functional capacity (RFC) to perform

sedentary work, and he could perform jobs existing in significant numbers in the national economy. (R. 20). The plaintiff appealed the decision to the United States District Court for the Northern District of Oklahoma, and the case was ultimately remanded back to the agency for further administrative proceedings on the Commissioner's unopposed motion.

On remand, the ALJ held a new hearing by telephone, on January 3, 2023, during which the plaintiff and a VE again testified. (R. 521). The plaintiff testified that the pain on his right side and in his right hand from his pinky to his middle finger is constant. (R. 526). He has difficulty holding a coffee cup in his right hand. (R. 527). He stated, "my left hand does most of all the work" and his right hand "assists with [the] index finger and . . . thumb pretty much." *Id*. He has difficulty using utensils in his right hand without experiencing cramps and right arm pain. *Id*. His girlfriend cooks his meals, but he can use the microwave. (R. 528). He has difficulty bathing, so his landlord installed a handhold in the shower. (R. 529). He does not do household chores or shopping, but he occasionally tries to carry in a few grocery bags inside from the front door. (R. 530).

On April 19, 2023, ALJ Hunt issued a decision denying benefits. (R. 492-514). The plaintiff did not file written exceptions with the Appeals Council.  Thus, ALJ Hunt's April 19, 2023, decision became the final decision of the Commissioner. *Id*. Plaintiff then timely appealed to the district court. (*See* Doc. 2).

### III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At

4

step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that his impairment or combination of impairments prevents him from performing his previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that the plaintiff had insured status until September 30, 2021, and did not engage in substantial gainful activity during the period of his initial alleged onset date of September 16, 2017, through September 30, 2021. (R. 499). At step two, the ALJ found that plaintiff suffered from the following severe impairments through the date last insured: degenerative disc disease of the cervical spine with neuropathy, cervical radiculopathy status post-craniotomy; and migraine headaches. The ALJ found plaintiff's history of seizures, hypertension, and major depressive disorder to be non-severe. (R. 499-500). The ALJ found the plaintiff's ulcers and acid reflux to be non-

medically determinable impairments, as "[t]hese impairments were not established by objective medical evidence from an acceptable medical source." (R. 502).

At step three, the ALJ found the plaintiff's impairments did not meet or medically equal a Listing through the date last insured. In explaining this finding, the ALJ discussed the Listings 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root) and 1.18 (Abnormality of a major joint(s) in any extremity). *Id.* The ALJ explained:

> There is no documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; or an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, handheld assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

*Id.* The ALJ also considered *SSR 19-4p: Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders* but concluded "there is no evidence from an acceptable medical source that the claimant's migraine headache disorder is equal in severity and duration to the criteria in Listing 11.02 (epilepsy)." *Id.*

At step four, the ALJ determined that, through the last date insured, the plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b). Specifically, the undersigned finds that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an 8-hour workday with normal breaks. He can stand and/or walk for 6 hours in an 8-hour workday with normal breaks. He can occasionally climb ramps, stairs, or ladders, balance, stoop, kneel, crouch or crawl but no climbing ladders, ropes, scaffolding, or unprotected heights. He can frequently grasp, handle, and fine

motor manipulation with the right upper extremity. No limitations on the left upper extremity.

*Id*.

The ALJ determined that plaintiff had past relevant work as a general laborer, construction worker, industrial truck operator, and welder. He found that the plaintiff "is unable to perform past relevant work as actually or generally performed." (R. 512). Thus, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical claimant with the plaintiff's age, education, work experience, and RFC, the ALJ found that through the date last insured, the plaintiff could have performed the requirements of representative occupations, including:

> ***Marker***, Dictionary of Occupational Titles (DOT) # 209.587-034, light, unskilled, specific vocational preparation (SVP) level 2, with 129,000 such jobs estimated in the national economy;
>
> ***Housekeeping Cleaner***, DOT # 323.687-014, light, unskilled, SVP level 2, with 162,000 such jobs estimated in the national economy; and
>
> ***Touchup Screener***, DOT # 209.587-034, light, unskilled, SVP level 2, with approximately 129,000 such jobs estimated in the national economy.

(R. 513). The ALJ found that these occupations comprise work that exists in significant numbers and, accordingly, found the plaintiff not disabled at step five. (R. 514).

## IV.    Discussion

The plaintiff argues that the ALJ failed to properly evaluate the opinion of Hope Burkett, D.O., who evaluated the claimant on a consultive basis on August 4, 2018 and improperly found that Dr. Burkett's opinion was inconsistent with the record as a whole. The plaintiff also asserts that the ALJ failed to properly assess his RFC, arguing that the

ALJ made a result-oriented change to the RFC on remand and failed to evaluate his limitations related to his right upper extremity. The Commissioner argues that the ALJ followed the required legal standards and that substantial evidence supports his decision.

## A. The ALJ Did Not Adequately Explain His Consideration of Dr. Burkett's Findings.

The plaintiff was evaluated by Dr. Hope Burkett on August 4, 2018. (R. 343). The plaintiff reported a history of right-sided upper and lower extremity pain and numbness that began in May of 2017. (R. 343). The plaintiff reported progressive numbness and pain in his right upper and lower extremities. On physical examination, Dr. Burkett observed that the plaintiff:

> **EXTREMITIES**: moves all extremities with effort, particularly right arm. Peripheral pulses adequate. Is able to pick up and manipulate paperclips without difficulty on left, some difficulty on right.

***

Grip strength and great toe strength decreased on right otherwise rated at 5/5. (R. 344). Dr. Burkett observed that the plaintiff's finger to thumb opposition was adequate. *Id*. When prompted as to whether the plaintiff could oppose his thumb and fingertips, manipulate small objects, or effectively grasp tools such as a hammer, Dr. Burkett responded "c̄ left." (R. 348).

On examination of the plaintiff's hands and wrists, Dr. Burkett noted decreased range of motion in the plaintiff's left and right wrist rotation in supination, left and right dorsal wrist hinge, left and right wrist ulnar motion, and right thumb flexion in the proximal and distal phalanges. (R. 348). Dr. Burkett further assessed decreased range of motion in

8

the plaintiff's right shoulder adduction, right shoulder forward elevation, right shoulder internal and external rotation, right hip adduction, right hip extension, right hip flexion, right hip internal and external rotation, right knee flexion, and right ankle flexion. (R. 346-48). Dr. Burkett assessed the plaintiff with migraines, tinnitus, right upper extremity numbness/pain of unknown etiology, and vertigo. (R. 345).

The ALJ found Dr. Burkett's findings persuasive as to the plaintiff's left upper extremity but unpersuasive as to the right upper extremity. (R. 510). The plaintiff argues that the ALJ failed to properly consider Dr. Burkett's findings as to his right upper extremity. The Commissioner acknowledges that Dr. Burkett made no mention of the plaintiff's right hand when discussing whether the plaintiff could oppose the thumb and fingertips, manipulate small objects, and grasp tools such as a hammer; but the Commissioner disputes that Dr. Burkett meant to indicate he could *not* complete such tasks with his right hand. (Doc. 17 at p. 6). The Court finds this argument unpersuasive, as the ALJ expressly interpreted Dr. Burkett's findings as meaning that the plaintiff was "unable to effectively oppose the thumb to the fingertips, manipulate small objects or effectively grasp tools such as a hammer with the right side." (R. 510). Thus, the issue is whether the ALJ adequately evaluated Dr. Burkett's findings as to the plaintiff's right upper extremity.

The ALJ's decision must articulate how the ALJ considered the medical opinions or prior administrative medical findings from each medical source. 20 C.F.R. § 404.1520c(b)(1). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how he considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative

medical findings. *Id*. § 404.1520c(b)(2). Consistency involves comparing the opinion with evidence "from other medical sources and nonmedical sources." 20 C.F.R. § 416.920c(c). Supportability refers to the extent that a medical source's opinion is supported by "relevant . . . objective medical evidence and supporting explanations" from the same medical source. *Id*. The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but generally, the ALJ's decision is not required to specifically address those additional factors. *Id*. § 404.1520c(c).

### 1.   The ALJ's Consistency Analysis

The ALJ's decision did not adequately explain why he found Dr. Burkett's findings inconsistent with the record as a whole. Regarding consistency, the ALJ stated:

> Dr. Burkett's findings, regarding the claimant's right upper extremity, are not consistent with the majority of the medical evidence before and after her examination. Exam in July 2018 showed no focal deficits. The claimant exhibited normal coordination, normal muscle strength and tone (Exhibit 8F, page 37). Less than a month after Dr. Burkett's exam, in August 2018, a neurologist's exam was largely unremarkable (Exhibit 7F). He exhibited 5 out of 5 motor strength throughout without drift, intact sensory, normal gait and base, negative Romberg, 2+ reflexes throughout, negative Babinski's reflexes and no Hoffmans' signs (Exhibit 7F, page 4).

> In November 2018, he exhibited 4/5 strength of his right extremities, and 5/5 strength of the left extremities. Posture and gait were normal (Exhibit 8F, pages 19-26). He only sought treatment via the ER in January 2019 for right extremity pain complaints after missing treatment with his neurologist (Exhibit 8F, pages 4-5). Examination noted some numbness over the ulnar aspect of the right hand and lateral aspect of the right foot, but his cranial nerves were intact, motor and sensory functions intact, reflexes equal and symmetric, no pronator drift, and negative Romberg (Exhibit 8F, page 4).

> Physical exams in March 2021 [and] November 2021 [were] unremarkable (Exhibit 16F, pages 41; 72). However, consistent with the longitudinal medical evidence, the claimant has been limited to frequent grasp, handle, and fine motor manipulation with the right upper extremity.

(R. 511).

As seen from this consistency analysis, the ALJ relied in part on evidence unrelated to the plaintiff's right upper extremity to discount Dr. Burkett's findings. For example, the ALJ cited evidence largely specific to the plaintiff's use of his lower extremity, including his gait and coordination. He also relied on negative Romberg findings associated with balance.[2]

This error alone would not merit remand, because the ALJ also cited evidence indicating normal findings in the upper right extremity on some occasions. However, in rejecting Burkett's findings as to the plaintiff's upper right extremity, the ALJ also ignored abundant medical evidence that that is consistent with Dr. Burkett's findings. (*See, e.g.*, R. 504 (plaintiff complained of numbness and tingling in his right arm and decreased right grip on examination in 2017); R. 504 ("complaints of three to four months of right-sided neck pain with numbness and weakness on the right side" in April 2018); R. 506 (a CT scan of the cervical spine was obtained due to complaints of right arm and neck pain, which "showed multi-level degenerative changes and moderate to severe facet arthropathy at the left C6-C7 facet but preserved vertebral body heights and maintained alignment" in January 2019); R. 506-07 (plaintiff's gabapentin prescription was increased for pain and

---

[2]     Moreover, the ALJ's reliance on the plaintiff missing an appoint to discredit Dr. Burkett's findings is problematic, given numerous records indicating that the plaintiff cannot afford co-pays, his prescription medication, or Tylenol. (R. 803, 806, 807, 809). The 10th Circuit, relying on the case of *Thompson v. Sullivan*, 987 F.2d 1482, 1489–90 (10th Cir.1993), has repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment. *Threet v. Barnhart*, 353 F.3d 1185, 1190 n. 7 (10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL 504882 at *8 (10th Cir. April 28, 2000).

tingling in his right arm in May 2019);   R. 507 (plaintiff complained of right hand sensitivity to touch and neurologic exam revealed 4/5 right arm strength and "hyperpathic right arm to touch" in July 2019) (emphasis added); R. 507 (claimant sought medication refills for pain and weakness in his right upper extremity and neck and was assessed with neuropathy and cervical stenosis in August 2019); R. 507 (plaintiff reported pain in limbs and was advised to continue gabapentin and prescribed Baclofen for pain in September 2019); R. 507 (plaintiff complained of worsened right-sided neck pain, given a Toradol injection, and a MRI revealed a bulging cervical disc likely impinging on nerve root in November and December 2019); R. 508 (the plaintiff underwent overnight hospitalization "after presentation with right-sided weakness, cervical radiculopathy, and paresis of one side of the face" in February 2021); R. 509 (plaintiff complained of worsening right sided weakness and numbness and exam revealed diminished strength throughout right upper extremity in October 2022)). The ALJ failed to explain why the findings on a few occasions outweigh other evidence throughout the record that appears consistent with Dr. Burkett's findings. *See Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)) (ALJ must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

Although the ALJ's consistency analysis included reference to unremarkable exam findings throughout the insured period (R. 510-11), it is not obvious why relatively normal findings on one occasion outweigh the abnormal signs noted on multiple other occasions during a time period when the plaintiff was seeking treatment for complaints of upper right

extremity pain, numbness, and weakness. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (An ALJ may not properly "cherry-pick" evidence supportive of nondisability while ignoring, without explanation, other evidence in the record); *see also Farris v. Berryhill*, CIV-17-255-BMJ, 2018 WL 387807, at *2 (W.D. Okla. Jan. 11, 2018) (explaining that "[p]icking and choosing from the record is an impermissible practice and one necessitating remand"). As such, the ALJ's failure to provide an explanation the Court can follow is reversible error. *See Clifton*, 79 F.3d at 1009 (holding that "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion," and thus the ALJ's unexplained conclusion was "beyond meaningful review").

### 2.    The ALJ's Supportability Analysis

The supportability factor examines how well a medical source supported her own opinions with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be." *Id.*

Here, the ALJ explained that Dr. Burkett's finding that the plaintiff could effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools such as a hammer on his left side were supported by her examination findings. However, he failed to address whether Dr. Burkett's opinion that the plaintiff could not do the same

movements on his right side were supported by her examination findings.[3] As discussed *supra*, Dr. Burkett's examination revealed decreased range of motion in the plaintiff's right shoulder, right wrist rotation and hinge, and right thumb flexion. (R. 344-49).

The Court must be able to follow the ALJ's reasoning in order to determine whether the correct legal standards were applied. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Although the ALJ summarized Dr. Burkett's consultative findings, the Court cannot trace the ALJ's supportability analysis as to Dr. Burkett's findings related to the plaintiff's upper right extremity. The Court may evaluate the ALJ's decision "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *see also Knipe v. Heckler*, 755 F.3d 141, 149 n.16 (10th Cir. 1985) (holding that an ALJ's decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2004) (courts "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). Remand is therefore required for further consideration of the record and explanation sufficient to enable meaningful review of the ALJ's reasoning.

**B.      The ALJ's RFC Determination may be Impacted on Remand.**

As discussed *supra*, the Court reverses the ALJ's decision based on an inadequate evaluation of Dr. Burkett's findings. The plaintiff did not present any developed argument

---

[3]      Notably, the fact that the parties dispute the import of Dr. Burkett's findings as to the plaintiff's right upper extremity limitations indicates that a supportability analysis was necessary.

as to the RFC beyond the issue of upper extremity limitations. Regarding the upper extremity limitations, the ALJ's RFC and other findings may be affected on remand after an adequate evaluation of Dr. Burkett's evaluation of the plaintiff. The Court notes that the plaintiff attained the age of 50 prior to his last insured date and any additional restrictions on the plaintiff's use of his right upper extremity, if warranted after an adequate evaluation of the evidence, would likely impact the disability determination. Specifically, the RFC, as assessed by the ALJ, currently provides for frequent grasping, handling, and fine motor manipulation with the right upper extremity. (R. 502). According to the VE's testimony, reducing the grasping, handling, and fine motor manipulation with the right upper extremity to only an occasional basis would preclude jobs in the national economy. (R. 533). The Court therefore remands so that the ALJ can conduct an adequate evaluation of Dr. Burkett's findings and consider whether additional limitations are warranted related to the plaintiff's use of his right upper extremity.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not consistent with the applicable legal standards. Therefore, the decision of the Commissioner finding the plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

IT IS SO ORDERED this 30th day of September 2024.

Christine D. Little
United States Magistrate Judge